**U.S. Department of Justice**

Civil Division

DMC:RTBlades
154-98-543

Telephone: (202) 514-7300
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

July 8, 2003

BY MESSENGER

Ronald H. Uscher, Esquire
Bastianelli, Brown, Touhey & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
Telephone: (202) 293-8815

FILE COPY

Re: Gold Line Refining, Ltd. v. United States, No. 98-543 C (Ct. Fed. Cl.)

Dear Mr. Uscher:

We have received Gold Line's responses to our April 11, 2003 (second) requests for production of documents. The responses have some critical deficiencies, which we address below. After these deficiencies have been resolved and we have had an opportunity for further examination of the responses, we may raise additional concerns.

First, Gold Line's responses fail to respond properly to our requests for documents and information involving the value or price of "fuel." As you know, following your receiving our requests, you and I discussed the meaning of "fuel." We agreed that the requests encompassed information and documents associated with the basis, methodology, and conclusions regarding the valuation of petroleum fuels (e.g., jet fuel, gasoline, diesel, heating oil, and similar products). See attached copy of e-mail. Gold Line's responses, however, are limited to only jet fuel. Further, Gold Line has provided only one-line summaries of nine projects involving the valuation of jet fuel. The responses do not contain, as they should, the portions of the studies that involve the value or price of petroleum fuels. See attached copy of e-mail.

As indicated upon the attached list, the Baker & O'Brien website lists at least 32 other studies conducted by that firm involving the valuation of fuel as we have agreed to define it, some for potential claims against the Government. The attached list is not intended to limit our requests to the items listed but to emphasize that Gold Line has failed to respond properly to our requests.

Please provide us with the relevant portions of all documents associated with the basis, methodology, and conclusions regarding the valuation of petroleum fuels (e.g., jet fuel, gasoline, diesel, heating oil, and similar products). Further, please provide us with the entirety of all reports or analyses involving Government contracts for fuel, including any reports or analyses relating to any claims or potential claims against the Government.

Second, you have improperly objected to some of our requests upon the ground that the request "exceeds the requirements of Rule 26(a)(2) of the Rules of the United States Court of Federal Claims for the disclosure of expert testimony." Rule 26(a)(2) does not limit the discovery that may be taken from expert witnesses. To the contrary, Rule 26(a) provides for disclosures that are to be made without a discovery request. Additional discovery beyond the Rule 26(a)(2) required disclosures is permissible and would be objectionable only to the extent that it violates some other rule. See, e.g., FRCP 26 Advisory Committee Notes, 1993 amendments. You have raised no other valid objection. Please provide us with all information and documents responsive to our requests to which you have raised this improper objection.

Third, in your response to Request No. 1, you state, "Mr. McCormick also reviewed and considered expert reports and/or testimony in the Barrett Refining and Pride Companies litigations." You do not indicate, however, which expert reports or testimony Mr. McCormick reviewed and considered. Please provide us with that information.

---

Fourth, your response to Request No. 7 lists references to various proceedings in which Mr. McCormick testified. Your response, however, does not provide the information necessary to identify the proceedings listed. Please provide that information as required by the request.

Fifth, your response to Request No. 12 states, "Mr. McCormick retained no documents." Request No. 12 asks for documents regarding economic price adjustment clauses that Mr. McCormick prepared, produced, authored, developed, reviewed, or to which he contributed. The request included, but was not limited to, any documents from when Mr. McCormick worked for Wyoming Refining Company or Hamilton Group. Your response that "Mr. McCormick retained no documents" implies that you have improperly limited your response to only when Mr. McCormick worked for Wyoming Refining Company or Hamilton Group. Please provide all responsive documents without imposing the improper limitation.

Similarly, Request No. 14 asks for all of Mr. McCormick's documents that include a discussion or assumption of the value of fuel, including, but not limited to, those documents listed upon Mr. McCormick's résumé. You have responded, "No documents have been retained," implying that you have improperly limited your response to only those documents listed upon Mr. McCormick's resume. Please provide all responsive documents without imposing the improper limitation.

Also, Request No. 16 asks for all documents regarding any economic price adjustment clauses, fuel bidding, fuel price, or fuel value that John G. Chapman prepared, produced, authored, developed, reviewed, or to which he contributed, including, but not limited to, any documents from when he worked for The Tosco Corporation or Unocal. You object to this request upon the ground that these documents "are the property of Tosco or Unocal," implying that you have improperly limited your response to only those documents from when Mr. Chapman worked for Tosco or Unocal. Please provide all responsive documents without imposing the improper limitation.

---

Sixth, as stated, you objected to producing documents responsive to Request No. 16 because those documents "are the property of Tosco or Unocal." During the May 1, 2003 deposition of C. Alan Stevens, however, you used a Tosco contract in your questioning of Mr. Stevens. It is improper for you to use Tosco or Unocal materials to develop Gold Line's case but refuse to produce those materials to us by imposing an objection that the materials are proprietary and confidential. Please provide us with all Tosco or Unocal materials to which you, Mr. Chapman, or any of your experts have access.

Seventh, as stated, your response to Request No. 14 states that Mr. McCormick cannot produce documents listed upon his résumé. Similarly, your responses to Request No. 17 and Request No. 18 state that Mr. Chapman cannot produce documents identified upon his statement of qualifications. We are entitled to receive these documents and to have the opportunity to compare the methodologies used with the methodologies used in this case. Please produce these documents. If Mr. McCormick cannot produce the documents listed upon his résumé, we request that you submit to the Court a revised résumé that removes any reference to documents that Mr. McCormick cannot now produce. Similarly, if Mr. Chapman cannot produce documents identified upon his statement of qualifications, we request that you submit to the Court a revised statement of qualifications that removes any reference to documents that Mr. Chapman cannot now produce.

We request that within 14 days you respond to us in writing concerning each issue raised in this latter. Nevertheless, if you have any questions or want to discuss any aspect of this case, please call me. Thank you for your cooperation in this matter.

Very truly yours,

Reginald T. Blades, Jr.

Reginald T. Blades, Jr.
Senior Trial Counsel
Commercial Litigation Branch

-----
Message-ID: <"CIVEX01-030422172059Z-84724*/PRMD=USDOJ/ADMD= /C=US/"@MHS>
From: Reginald.Blades@usdoj.gov
To: "Kaufer, Howard" <Howard.Kaufer@dla.mil>, "'uscher@govconlaw.com'" <uscher@govconlaw.com>
Subject: RE: Gold Line (4/11 Doc. Discovery)
Date: Tue, 22 Apr 2003 13:21:45 -0400
X-Mailer: Internet Mail Service (5.5.2656.59)

As we discussed today on the telephone, yes we are interested in the basis, methodology, and conclusions regarding the valuation of petroleum fuels (e.g., jet fuel, gasoline, diesel, heating oil, and similar products).

-----Original Message-----
From: uscher@govconlaw.com [mailto:uscher@govconlaw.com]
Sent: Tuesday, April 22, 2003 12:47 PM
To: Blades, Reginald; hkaufer@desc.dla.mil
Subject: Gold Line (4/11 Doc. Discovery)

REGGIE and HOWARD: I am working with our experts to identify documents responsive to your 4/11 document request.

Last week we discussed limiting your request to documents describing "methods of valuing liquid petroleum fuels." A related question has come up. Baker & O'Brien has done studies valuing "refineries" as assets. In a few cases the studies focus on hardware or equipment. However, more common are studies that primarily value the refinery asset, but also refer to product values and methods. I assume you also wish the segregable portions (product values and methods) of these studies. Please confirm. Thanks, Ron Uscher.

**1. Assignment**
Feasibility and Economics to Produce CARFG3 Gasoline and Diesel

**Location**
California

**Synopsis**
Performed independent assessment of a refinery project to produce CARB gasoline and diesel. Assessment included feasibility, cost, and economics of the project. Study was performed for a prospective buyer of the refinery.

**2. Assignment**
Fair Market Value of a Refinery

**Location**
Texas

**Synopsis**
Performed an economic evaluation of a large Gulf Coast refinery to determine the refinery's range of fair market values. Evaluation was performed for a prospective buyer of the refinery.

**3. Assignment**
Refinery Venture Development

**Location**
California

**Synopsis**
Performed economic evaluation and developed comprehensive financial models for a West Coast refinery re-start and upgrade program. The engagement included market analysis, evaluation of investment options, and support of project financing efforts.

**4. Assignment**
Refinery Acquisition

**Location**
Texas

**Synopsis**
Developed pro forma projection model and project evaluation analyses pursuant to a refiner's successful screening, bid, and purchase of a major Gulf Coast refinery. Complementary work included due diligence efforts in support of capital funding for the transaction and post-acquisition development support.

**5. Assignment**
Wholesale Marketing Business Development

**Location**

Alabama

**Synopsis**
Analyzed prospective wholesale petroleum products markets and their associated economics for a pipeline company considering acquisition of a refining and marine terminal operation. Associated netback analysis, coupled with refinery performance projections, formed the basis for client's bid strategy.

**6. Assignment**
Retail Marketing Business Development

**Location**
Colorado

**Synopsis**
Assessed Mid-Continent petroleum retail markets and competitive environment on behalf of a prospective retail market entrant. Pro forma economics were prepared for various retail business configurations to determine entry strategy options and assess the client's development objectives.

**7. Assignment**
Alaskan Refining and Marketing Business

**Location**
Alaska

**Synopsis**
Conducted studies of the competitive performance of a refining and marketing business in Alaska. Made recommendations to senior management for investments and practices to improve profitability.

**8. Assignment**
Profit Improvement at a Farm Cooperative

**Location**
United States

**Synopsis**
Directed a team charged with the task of improving profits for the refining and marketing business of a farm cooperative. Over a period of two years, made substantial improvements in profitability by effecting changes in refinery operations, crude slate, and product distribution.

**9. Assignment**
U.S. Refining Acquisition by Middle East Oil Producer

**Location**
United States

**Synopsis**

Evaluated a group of refineries owned by a major U.S. oil company for acquisition by the petroleum division of a Middle East oil producing country. Developed economics, capital investment plans, crude supply alternatives, product marketing analysis, and analysis of risk. The acquisition was completed.

**10. Assignment**
Refinery Ownership Dispute

**Location**
United States

**Synopsis**
Prepared expert report for litigation involving an ownership dispute. Reviewed economics of both refining and product marketing. Described potential economic impact of change in ownership.

**11. Assignment**
Analysis of Refinery Performance and Operating Practices

**Location**
India, Japan, United States

**Synopsis**
Participated in projects for both domestic and international clients analyzing refinery performance gaps relative to peer refineries that were similar in size and complexity. The completed analyses resulted in target setting for multiple improvement initiatives aimed at achieving cost savings and gross margin increases. The work involved site visits, employee interviews, final reporting, and presentations to company management.

**12. Assignment**
Refining Economic Analysis and Forecasting

**Location**
United States

**Synopsis**
Participated in the development of monthly, quarterly, and annual financial analysis and forecasting of refining business unit's financial and operating performance for communication to executive management and corporate investor relations.

**13. Assignment**
Domestic Major Refinery and Marketing Analysis

**Location**
United States

**Synopsis**

Reviewed publicly available quarterly and annual data for major domestic refining and marketing companies. Analyses included margin and operating expense comparisons for the purpose of relative performance reconciliation and identification of initiatives to support and sustain competitive advantage. The results led to identification of multiple refinery site margin improvement and cost reduction projects.

**14. Assignment**
Study of Practices at Best Refineries

**Location**
Canada, United States

**Synopsis**
Participated in a project to identify key operating and management practices at a group of top performing refineries in the U.S. and Canada. Conducted site interviews and prepared analyses to determine the performance drivers that create excellence in cost, throughput, and gross margin. Reviewed important practices in areas of administration, culture, technology, operations, maintenance, reliability, and planning and economics. Prepared detailed report documenting conclusions.

**15. Assignment**
Low Sulfur Fuel Analysis

**Location**
Kansas

**Synopsis**
Made presentation outlining the decision factors for investing capital to meet the new low sulfur diesel fuel regulations.

**16. Assignment**
Refinery Acquisition

**Location**
Texas

**Synopsis**
Assisted an independent oil producer in evaluating the economics of acquiring and operating a small, shut-down refinery in Texas. Evaluation included a site visit.

**17. Assignment**
Midwest Refinery Analysis

**Location**
Illinois

**Synopsis**
Compared financial performance of client's refineries with selected competitors using data from *PRISM*™, Baker & O'Brien's proprietary refining analysis tool.

**18. Assignment**
Crude Oil Evaluation

**Location**
Ecuador

**Synopsis**
Evaluated several processing alternatives and combinations of various refining assets to process heavy Ecuadorian crude production. Included the potential use of Carribean and Gulf Coast refineries.

**19. Assignment**
Refinery Evaluation

**Location**
Pennsylvania

**Synopsis**
Used *PRISM*™, Baker & O'Brien's proprietary refining industry analysis tool, to establish relative refinery profitability for Philadelphia refining system. Developed proposal to install instrumentation upgrades and be paid through a percentage of the improved economic value.

**20. Assignment**
Refinery Evaluation

**Location**
Texas

**Synopsis**
Provided an evaluation of a refinery operation on behalf of a major lending institution.

**21. Assignment**
Refinery Due Diligence

**Location**
United States

**Synopsis**
Evaluated a large independent refining operation to provide a potential lending institution assurance that the business was a going concern. Assets were deemed to be a going concern with potential interest for processing capability by heavy crude producers.

**22. Assignment**
Audit of Military Fuel Contract

**Location**
California

**Synopsis**
Performed a preliminary audit of a military fuel supply contract between a refiner and the Defense Energy Supply Center. Advised the client on the financial impact using an alternate pricing methodology for the products in the contract.

**23. Assignment**
Jet Fuel Underpayment Claim

**Location**
Louisiana

**Synopsis**
Assessed jet fuel supply contracts to the Defense Energy Supply Center to see if an overpayment claim was justified.

**24. Assignment**
Terminal Evaluation

**Location**
California

**Synopsis**
Provided overview of terminal and pipeline business in southern California.

**25. Assignment**
Refinery Profitability and Crude Oil Supply

**Location**
Texas

**Synopsis**
Completed refinery analysis on behalf of client considering expansion of pipeline capacity to serve a U.S. Gulf Coast refinery. Evaluated the long-term viability of the refinery using *PRISM*™, Baker & O'Brien's proprietary refining industry analysis tool.

**26. Assignment**
Distribution Costs for Very Low Sulfur Diesel Fuel

**Location**
United States

**Synopsis**

Estimated the incremental costs of distribution of very low sulfur diesel fuel for the Engine Manufacturers Association. Study included all distribution costs incurred between refineries and retail service stations with particular emphasis on pipeline and terminal operating and capital costs.

**27. Assignment**
Refinery Reactivation and Upgrading

**Location**
Louisiana

**Synopsis**
Worked on behalf of a major investment banking group to evaluate the plans of an independent refiner to upgrade and re-activate its 200,000 barrels per day refinery. Conducted "due diligence" on the company's plans and specifications, evaluated likely economics, and assessed competitive forces in the marketplace. Upon closing of the financial transaction, monitored the construction progress, schedule, and budget over a period of four years. Reviewed all invoices for labor and materials and approved draw down of construction funds in accordance with the contractual agreements.

**28. Assignment**
Refinery Valuations

**Location**
California

**Synopsis**
Providing ongoing assistance to several clients in the assessment of fair market values for refineries throughout the country. The scope of activities includes a review of each refinery's process technologies and capabilities and historical and projected profitability. Clients include refiners, financial institutions, and local governments.

**29. Assignment**
Refinery Feasibility Study

**Location**
Arizona

**Synopsis**
On behalf of a financial institution considering the financing of a "grassroots" refinery project, prepared a detailed feasibility study for the refinery. The proposed facility was to be based outside of Phoenix, AZ, where it was to serve the fast growing Phoenix/Tucson area with new "clean burning" fuels. Analyzed regional product markets, existing and potential competition, alternate crude oil sources and availability, optimum refinery configuration, and by-product disposition. Attended meetings with potential crude suppliers and product customers. Feasibility study was also used in negotiations with equity

participants.

**30. Assignment**
Refinery Valuations

**Location**
California

**Synopsis**
Prepared annual property values for several major refineries amounting to about $8 billion. Assisted with discovery, inspected each of the plants, analyzed refinery operations and profitability. Assisted in negotiating settlements. Testified in public hearings before appeals boards.

**31. Assignment**
Refinery Business Interruption

**Location**
Mississippi

**Synopsis**
Determined the economic damages suffered by a refiner as a result of multiple incidents which eventually led to reduced feed to the refinery. Project required the analysis of all refining units including their actual and planned operations and maintenance. Alternative utilizations of feedstock and supply of products was also investigated.

**32. Assignment**
Refinery Valuation Dispute

**Location**
Minnesota

A group of minority shareholders agreed to sell their interest in a company that included various refinery assets. The purchasing stockholders provided certain representations and warranties that all "material" information regarding the assets had been disclosed prior to establishment of the transaction value. Following the closing, the sellers alleged that.the buyers had breached their warranties by not providing all data and information material to the valuation of the assets. In particular, they claimed that the refining assets had been grossly undervalued in the transaction. A lawsuit was filed.

Baker & O'Brien was engaged by the plaintiffs to estimate what the "fair market value" of the refinery assets would have been at the time of the transaction--more than 10 years ago. The fair market value is the price that a willing seller and a willing buyer would agree to transfer the assets for in an "arm's length" transaction. Baker & O'Brien prepared a detailed report, which was submitted into evidence in the case, which showed that the refinery's location, its processing capability, and its access to low-cost feedstocks made it much more

valuable than competitive facilities. In a lengthy trial proceeding, Baker & O'Brien defended its detailed valuation before a jury.