**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GOLD LINE REFINING, LTD., through its trustee Ben B. Floyd, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 98-543C (Judge Hewitt) |

| | | |
|---|---|---|
| BEN B. FLOYD, TRUSTEE of the Bankruptcy Estate of Gold Line Refining, Ltd., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 03-2245C (Judge Hewitt) |

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO CONSOLIDATE

Plaintiffs, Gold Line Refining, Ltd. through its trustee, Ben B. Floyd, and Ben B. Floyd, Trustee of the Bankruptcy Estate of Gold Line Refining, Ltd., (hereinafter collectively referred to as "Gold Line") hereby submit their opposition to the Defendant's (the "Government" or "DESC") Motion to Consolidate Gold Line Refining, Ltd. v. United States, No. 98-543C ("Gold Line I") and Ben B. Floyd, Trustee of the Bankruptcy Estate of Gold Line Refining, Ltd. v. United States, No. 03-2245C ("Gold Line II").

# I. FACTUAL BACKGROUND

## A. *Gold Line I*

On May 31, 1995, Gold Line submitted a certified claim to the DESC contracting officer for improper price reductions under the economic price adjustment ("EPA") clause of Contract No. DLA600-93-D-0562. Gold Line amended its claim and certified a revised claim for improper price reductions on May 28, 1997. On July 1, 1997, the contracting officer issued a final decision denying Gold Line's May 28, 1997 revised claim.

On June 25, 1998, Gold Line filed suit in the Court of Federal Claims challenging the legality of the EPA clause contained in Gold Line's Contract No. DLA600-93-D-0562. The scope of the litigation in Gold Line I is Gold Line's JP-8 type jet fuel deliveries under Contract No. DLA600-93-D-0562.

On September 23, 1998, DESC filed a Motion to Dismiss arguing that: (a) this Court lacked subject matter jurisdiction, and (b) that Gold Line failed to state a claim upon which relief can be granted. On March 25, 1999, DESC's Motion was denied on the jurisdiction question and Gold Line's claims for *quantum meruit* and reformation. DESC's Motion was granted with respect to Gold Line's claim for reformation based on unilateral mistake.

On March 7, 2002, DESC filed a Motion for Summary Judgment. DESC argued that the EPA clause, B19.33, in Gold Line's contract did not violate the FAR, that Gold Line waived its right to challenge the challenge the legality of the clause, and that Gold Line was not harmed by the use of the clause. Gold Line filed a Cross Motion for Partial Summary Judgment on May 15, 2002. The Court held an oral argument on August 12, 2002. On October 30, 2002, the Court denied DESC's Motion for Summary Judgment and granted in part Gold Line's Cross Motion for Partial Summary Judgment.

Currently Gold Line I is in the discovery stage. Gold Line has deposed DESC's expert witness and conducted some document discovery. Although DESC has conducted some document discovery, DESC has not deposed any fact witnesses[1] or Gold Line's expert witnesses[2]. Discovery currently is scheduled to be completed by December 5, 2003.[3]

B. *Gold Line II*

Gold Line filed its Complaint on September 29, 2003 ("Gold Line II"). Gold Line challenged the legality of the EPA clause contained in Gold Line's seven (7) contracts. Those seven (7) contracts are: DLA600-91-D-0550, DLA600-92-D-0483, DLA600-92-D-0526, DLA600-93-D-0500, DLA600-93-D-0562[4], DLA600-93-D-0584, and DLA600-94-D-0478. Gold Line II covers deliveries of JP-8, JP-4, and F-76 a marine diesel fuel.

To date, DESC has not filed an Answer in response to Gold Line's Complaint. Gold Line anticipates that, in lieu of filing an Answer, DESC will file a Motion for Summary Judgment. This is the same procedure that DESC has followed in the other nineteen (19) cases pending before the Court of Federal Claims challenging DESC's EPA clause.

---

[1] On April 15, 2002, Counsel for Gold Line provided DESC with the address and telephone numbers of several of Gold Line's former officers and directors. DESC has not issued notices of deposition for any of these witnesses or any others.

[2] Gold Line acknowledges that DESC's delay in deposing Gold Line's expert witnesses was due in significant part to the delay in document production from Gold Line's experts.

[3] On November 3, 2003, DESC filed a motion to extend the discovery cut-off date to September 5, 2004. Gold Line opposes DESC's request to extend the discovery period by nine (9) months. Gold Line has proposed that the discovery schedule be extended for four (4) months.

## II. ARGUMENT

Rule 42(a) of the Rules of the Court of Federal Claims provides that when actions involving a common question of law or fact are pending before the Court of Federal Claims, the Court may order the actions consolidated. The Court has broad discretion in determining whether consolidation is proper. See generally, 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 42.10[2][a] (3d ed. 2003). The appropriateness of consolidating cases depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. Karuk Tribe of Ca. v. United States, 27 Fed. Cl. 429, 433 (1993), citing, Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987).

One factor that the Court will consider in determining whether consolidation is appropriate is the delay consolidation will have on the proceedings of each case. Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States, 671 F.2d 1305, 1312 (Ct. Cl. 1982). The Court will look to the state of case preparation and discovery in each of the cases. Delay can be a significant factor weighing against consolidation. 8 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 42.10[4][b] (3d ed. 2003).

In this case, consolidating Gold Line I and Gold Line II will significantly delay the proceedings in Gold Line I. Gold Line disagrees with DESC's assertion that little time would be lost if the cases were consolidated. Consolidating Gold Line II with Gold Line I will significantly slow down the progress of Gold Line I.

---

[4] Contract No. DLA600-93-D-0562 is the subject of both lawsuits. Gold Line I covers Gold Line's JP-8 deliveries under the contract while Gold Line II covers Gold Line's JP-4 deliveries.

Gold Line I was filed over five years before Gold Line II. Gold Line I already has proceeded past the summary judgment stage and currently is in the discovery stage. Indeed, DESC conducted additional document discovery in Dallas, TX on November 19 –20, 2003. Gold Line II, on the other hand, is in the early stages of the litigation. DESC has yet to file an Answer in the case.

As previously stated, Gold Line anticipates that, in lieu of filing an Answer in Gold Line II, DESC will file a Motion for Summary Judgment arguing that its EPA clause does not violate the FAR, that Gold Line waived its right to challenge the legality of the clause, and that Gold Line was not harmed by the use of the clause. In addition, DESC likely will argue that it had a valid deviation to use the EPA clause for some of Gold Line's contracts. DESC has filed such Motions for Summary Judgment in all of the other nineteen (19) cases pending before the Court of Federal Claims challenging DESC's EPA clause.[5]

Proceeding through the summary judgment stage in Gold Line II will take several months at a minimum. It took five (5) months to resolve the summary judgment motions in Gold Line I. The other EPA cases have averaged approximately eight (8) months to resolve their summary judgment motions. There is no reason to delay Gold Line I for up to eight (8) months while summary judgment motions are pending in Gold Line II.[6]

The fact that Gold Line I and Gold Line II involve different types of fuel also will delay the proceedings if the cases are consolidated. Gold Line I only involves the valuation of JP-8, a

---

[5] Even if DESC does not file a Motion for Summary Judgment in Gold Line II, Gold Line anticipates that it will need to file such a motion. Gold Line will argue that the EPA clause violates the FAR and that Gold Line is entitled to *quantum valebant* recovery.

[6] If DESC concedes that Clause B19.33 violates the FAR, that Gold Line did not waive its right to challenge the legality of the clause, that Gold Line was harmed by the use of the clause, and that DESC's deviations are not enforceable, then Gold Line will not object to consolidating the cases.

kerosene-based jet fuel. Gold Line II, on the other hand, involves the valuation of JP-8, JP-4 (a naphtha-based jet fuel), and F-76, a marine diesel fuel. There are different methods of valuing each of the three (3) types of fuels. Expert witnesses will be needed to analyze the valuation of each type of fuel and draft expert reports on the fair market value of the fuels delivered by Gold Line under the contracts. Gold Line's expert reports in Gold Line I have already been prepared and submitted. The reports cannot be reused for Gold Line II because of the different fuels and time periods. Gold Line anticipates that it will take several months after the Court issues its decision on the summary judgment motions in to submit the expert reports in Gold Line II. Therefore, it is clear that consolidating the cases will significantly delay the progress of Gold Line I while Gold Line II catches up.

In addition to the delay that would result from consolidation, the cases also present some separate legal issues with regard to counterclaims. Contrary to DESC's statement in its Motion to Consolidate, DESC did not assert a counterclaim in its final decision in Gold Line I.[7] The issue of a government counterclaim only applies to Gold Line II. Therefore, consolidation will not improve the opportunity and the ability of the Court and the parties to address the counterclaim and offset claim issues. Furthermore, the Government's assertion of a counterclaim or offset in Gold Line II would be subject to the automatic stay in bankruptcy under 11 U.S.C. Sec. 362. The Government would first have to petition and obtain the approval of the Bankruptcy Court for the Southern District of Texas to lift the stay before filing its counterclaim. Therefore, the issue of DESC's assertion of a counterclaim in Gold Line II would further delay the ultimate resolution of Gold Line I if consolidated.

---

[7] As the Court is aware, any government counterclaim must be the subject of a final decision.

"An avowed purpose of the Contract Disputes Act is to foster the prompt, efficient resolution of disputes between contractors and the government." The Triax Co. v. United States, 20 Cl. Ct. 507, 512 n. 5 (1990). Gold Line's JP-8 claim under the EPA Clause of Contract No. DLA600-93-D-0562 was first asserted in 1995; then revised and certified in 1997. Resolution of this long-standing claim should not be delayed.

## III. CONCLUSION

Consolidating the cases will significantly delay the progress of Gold Line I. Such delay could reach up to one (1) year. Under such circumstances, the interest of judicial economy does not outweigh the potential for delay that may result from consolidation. In addition, Gold Line II has issues unrelated to Gold Line I – namely the valuation of JP-4 and F-76 and the issue of DESC's right to assert a counterclaim. Therefore, Gold Line respectfully requests that the Court deny DESC's Motion to Consolidate the cases.

Respectfully submitted,

s/ Ronald H. Uscher
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 293-8815
(202) 293-7994 (facsimile)

Counsel for Plaintiffs

*Of Counsel:*

Donald A. Tobin
Lori Ann Lange
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 293-8815
(202) 293-7994 (facsimile)

Dated: November 26, 2003

M:\flyd\002\Memorandum in Support of Opposition