**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GOLD LINE REFINING, LTD.,<br>through its trustee, Ben B. Floyd,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 98-543C<br>(Judge Hewitt) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER AND ASSERT AFFIRMATIVE DEFENSE**

Plaintiff, Gold Line Refining, Ltd. through its trustee, Ben B. Floyd, (hereinafter referred to as "Gold Line") hereby submits its opposition to the Defendant's (the "Government" or "DESC") Motion to Amend Answer and Assert Affirmative Defense. As discussed below, the Court should deny DESC's Motion to Amend Answer and Assert Affirmative Defense because justice requires that DESC's Motion be denied. As discussed below, granting the amendment would be futile because DESC is not entitled to setoff or recoupment, Gold Line would be prejudiced by the amendment, and DESC unduly delayed in asserting its right to setoff or recoupment.

## I. FACTUAL BACKGROUND

On May 31, 1995, Gold Line submitted a certified claim seeking an equitable adjustment for the underpayments DESC made to Gold Line under the EPA clause in Contract No. DLA600-93-D-0562. Although Contract No. DLA600-93-D-0562 involved the supply of two different types of jet fuel, JP-4 and JP-8, Gold Line's claim was limited to its JP-8 deliveries.

Gold Line asserted that it had been underpaid for its JP-8 deliveries due to the illegal EPA clause in the contract.

The contracting officer issued a final decision on July 1, 1997. The contracting officer denied Gold Line's claim. The final decision did not assert any government claim for alleged overpayments made by DESC for Gold Line's JP-4 deliveries nor did the final decision assert any setoff rights.

On June 25, 1998, Gold Line filed suit in this Court appealing the contracting officer's final decision ("Gold Line I"). The scope of the litigation in Gold Line I is Gold Line's JP-8 deliveries under Contract No. DLA600-93-D-0562.

On November 4, 2002, Gold Line submitted a certified claim to the Contracting Officer seeking an equitable adjustment for the underpayments resulting from the operation of the EPA clause in seven of Gold Line's contracts. Gold Line's claim covered deliveries of three types of fuel: JP-8, JP-4, and F-76. Gold Line's claim included a claim for underpayments on Gold Line's JP-4 deliveries under Contract No. DLA600-93-D-0562.

On April 10, 2003, the Contracting Officer issued a final decision denying Gold Line's claim. In the final decision, the Contracting Officer asserted a counterclaim for the alleged overpayments DESC made to Gold Line under the seven contracts.

Gold Line filed its Complaint appealing the final decision on September 29, 2003 ("Gold Line II"). The scope of the litigation in Gold Line II includes Gold Line's JP-4 deliveries under Contract No. DLA600-93-D-0562, as well as Gold Line's JP-4, JP-8, and F-76 deliveries under the other six contracts.

On November 10, 2003, DESC filed a Motion to Consolidate Gold Line I and Gold Line II. Gold Line filed its Opposition to DESC's Motion on November 26, 2003. The Court denied

DESC's Motion to Consolidate on December 8, 2003. The Court's decision was based on the maturity of the litigation in Gold Line I and the preliminary stages of the litigation in Gold Line II, the different products, time frames, and the potential affirmative defenses and counterclaims involved in Gold Line II.

## II. LEGAL ARGUMENT

### A. DESC's Motion to Amend its Answer and Assert an Affirmative Defense is an Attempt to Circumvent the Court's Order Denying Consolidation

Having lost its Motion to Consolidate, DESC now is attempting to do a partial end run around the Court's December 8, 2003 Order denying consolidation. In Gold Line II, Gold Line has asserted a claim for underpayment for its JP-4 deliveries under Contract No. DLA600-93-D-0562. DESC contends that it made overpayments for these same JP-4 deliveries and has asserted a counterclaim in its final decision denying Gold Line's claim.

DESC now is asking this Court for permission to also assert this counterclaim in Gold Line I even though Gold Line's claim currently is pending in Gold Line II. DESC is seeking to setoff these supposed overpayments for JP-4 deliveries against any recovery Gold Line receives in Gold Line I for the underpayments for Gold Line's JP-8 deliveries. The essence of DESC's setoff is a government counterclaim. The reasons for denying consolidation, however, similarly dictate that the Court deny DESC's Motion to Amend Answer and Assert Affirmative Defense. It would be prejudicial to Gold Line to permit DESC to assert a setoff while Gold Line's underpayment claim for the same JP-4 deliveries is pending in a separate case.

In order for the Court to rule on the validity of DESC's setoff against any recovery in Gold Line I, the Court first will have to determine the fair market value of the JP-4 at issue in Gold Line II. The Court then will have to determine whether Gold Line was underpaid or overpaid in relation to that fair market value. DESC only has a setoff or recoupment claim for

overpayment if the Court determines that Gold Line in fact was overpaid for the JP-4. Simply stated, DESC is asking the Court to conduct a trial on part of Gold Line II in Gold Line I.

JP-4 is a different product than the JP-8 – the only product at issue in Gold Line I. There are different methods of valuing these two types of fuels. If the Court grants DESC's Motion, the parties will be required to conduct discovery regarding the fair market value of the JP-4 deliveries. Expert witnesses will be needed to analyze the valuation of JP-4 and draft expert reports on the fair market value of the JP-4 delivered by Gold Line.[1] It is clear that permitting DESC to assert a setoff claim will significantly slow down the proceedings in Gold Line I and will impact the ongoing litigation in Gold Line II.

Permitting DESC to amend its answer to assert a setoff claim is prejudicial to Gold Line. As discussed above, the basis for DESC's setoff claim is intertwined with Gold Line's claim in Gold Line II. In order to rule on any setoff claim in Gold Line I, the Court will have to rule on the validity of Gold Line's claim in Gold Line II. If Gold Line was underpaid for its JP-4 deliveries, then DESC has no claim to setoff against Gold Line's recovery in Gold Line I. Gold Line I and Gold Line II, however, are separate cases, and this Court already has ruled that it is not proper to consolidate them. It would be prejudicial to Gold Line if DESC were permitted to make an offset in Gold Line I prior to the conclusion of the litigation concerning whether Gold Line was underpaid in Gold Line II.

B. Justice Requires that the Court Deny DESC's Motion to Amend

Rule 15(a) provides that leave to amend a pleading shall freely given when justice so requires. In determining whether leave to amend should be granted, the Court generally considers a number of factors including: (1) undue delay; (2) bad faith, (3) prejudice to the

[1] The expert reports in Gold Line I only address the fair market value of Gold Line's JP-8 deliveries.

nonmovant, and (4) the futility of the amendment. See generally, Angelo v. United States, 57 Fed. Cl. 100, 104 (2003); Bassett, New Mexico LLC v. United States, 46 Fed. Cl. 393, 394 (2000). The existence of any one of these factors is sufficient to deny a motion to amend. Alfa Laval Separation, Inc. v. United States, 47 Fed. Cl. 305, 312 (2000), citing, Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991).

In this case, several of the factors weigh in favor of denying DESC's Motion to Amend its Answer. First, the amendment is futile. As discussed below, DESC is not entitled to assert either setoff or recoupment. DESC is not entitled to setoff because it violates the automatic stay. In order to assert a right of setoff, a creditor must obtain a lifting of the stay from the bankruptcy court or assert a setoff right in its proof of claim against the debtor. DESC has done neither. In addition, DESC waived its right to setoff by failing to file a proof of claim with the bankruptcy court by the claim bar date. Similarly, DESC is not entitled to recoupment because DESC's setoff claim involves different transactions and fuel types.

Second, it would be prejudicial to Gold Line to permit DESC to assert a setoff while Gold Line's underpayment claim for the same JP-4 deliveries is pending in a separate case. In order for Court to rule on the validity of DESC's setoff against any recovery in Gold Line I, the Court will have to conduct a trial on the fair market value of the JP-4 at issue in Gold Line II. DESC is asking the Court to partially consolidate Gold Line II with Gold Line I. The Court, however, previously determined that such consolidate is improper since it will significantly delay the proceedings in Gold Line I.

Lastly, DESC unduly delayed seeking to amend its Answer. Gold Line asserted a claim for underpayments on Gold Line's JP-4 deliveries on November 4, 2002. Although DESC asserted that it had a counterclaim for overpayments on these same JP-4 deliveries in its April

10, 2003 final decision, DESC never sought to setoff or recoup these alleged overpayments. It was only after this Court denied DESC's Motion to Consolidate Gold Line I and Gold Line II that DESC moved to amend. DESC is attempting to circumvent this Court's ruling denying the Motion to Consolidate. For these reasons, justice requires that the Court deny DESC's Motion to Amend its Answer to Assert Affirmative Defense of setoff or recoupment.

C. DESC is Not Entitled to Setoff

In its Motion, DESC asserts that it should be entitled to setoff the alleged overpayments that DESC made to Gold Line for JP-4 under Contract No. DLA600-93-D-0562 against any recovery for the underpayments made on Gold Line's JP-8 deliveries. Generally speaking, setoff involves a claim of the defendant against the plaintiff that arises out of a transaction which is different from that on which the plaintiff's claim is based. See generally, In re Kosadnar, 157 F.3d 1011 (5th Cir. 1998); In re United States Abatement Corp., 79 F.3d 393 (5th Cir. 1996). As discussed below, DESC is not entitled to setoff.

1. DESC's Setoff Claim Violates the Automatic Stay

As the Court is aware, Gold Line is in bankruptcy. Gold Line's bankruptcy petition was filed on August 8, 1997, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 97-48184. Originally filed as a case under Chapter 11, Gold Line's bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code on February 17, 1999. Since Gold Line is in bankruptcy, any action brought by or against Gold Line is governed by the Bankruptcy Code.

The Bankruptcy Code provides for a limited right of setoff. 11 U.S.C. § 553; In re United States Abatement Corp., 79 F.3d 393 (5th Cir. 1996) (set off is allowed in only very

narrow circumstances in bankruptcy). In order to establish a valid right to setoff, a creditor must prove:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case;

2. The creditor has a claim against the debtor that arose prior to the commencement of the bankruptcy case; and

3. The debt and the claim are mutual obligations.

In re Luongo, 259 F.3d 323, 334 (5th Cir. 2001); Braniff Airways, Inc. v. Exxon Co. U.S.A., 814 F.2d 1030, 1035 (5th Cir. 1987). Creditors are limited to offsetting debts owed prepetition. In re Eggemeyer, 75 B.R. 20, 22 (S.D. Ill. 1987).

Since a setoff involves a creditor's claim against the debtor, it is subject to the Bankruptcy Code's automatic stay.[2] 11 U.S.C. 362(a)(7); In re Corland Corp., 967 F.2d 1069, 1076 (5th Cir. 1992) (setoff is explicitly encompassed by the automatic stay). In order to assert a right of setoff, a creditor must obtain a lifting of the stay from the bankruptcy court or assert a setoff right in its proof of claim against the debtor. A creditor cannot exercise a prepetition right of setoff without obtaining the permission of the bankruptcy court. In re Calore Express Co., 288 F.3d 22 (1st Cir. 2002). DESC, however, is attempting to do so through its Motion.

DESC's assertion of a setoff before this Court in this case violates the automatic stay. The bankruptcy court established September 27, 2000, as the bar date for the filing of proofs of claim against Gold Line. It is undisputed that DESC has not filed any proof of claim against Gold Line with the bankruptcy court. Nor has DESC sought or obtained relief from the

---

[2] The purposes of the automatic stay are to protect the debtor's assets, provide temporary relief from creditors, and further equitable distribution among the creditors. In re Reliant Energy Servs., Inc., 349 F.3d 816 (5th Cir. 2003); Gatx Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711 (5th Cir. 1985). The automatic stay is applicable to all entities, including the Government.

automatic stay from the bankruptcy court to assert a setoff claim against Gold Line. Therefore, DESC's attempt to assert a setoff claim before this Court violates the automatic stay.

2. DESC Waived its Setoff Claim

DESC has waived its setoff claim against Gold Line by failing to assert the setoff claim in the bankruptcy case. The courts have recognized that a creditor can waive its right to setoff. See generally, United States v. Continental Airlines, 134 F.3d 536, 541 (3rd Cir. 1998) (setoff must be exercised by the creditor in a timely fashion and appropriately asserted in accordance with the Bankruptcy Code); In re Custom Center, Inc., 163 B.R. 309, 316 (Bankr. E.D. Tenn. 1994) (right of setoff can be waived by creditor's continued failure to assert setoff as bankruptcy case is administered); In re Apex Int'l Management Servs, Inc., 155 B.R. 591, 594 (Bankr. M.D. Fla. 1993) (creditor otherwise entitled to setoff waived setoff right when setoff not timely asserted); In re Britton, 83 B.R. 914, 920 (Bankr. E.D.N.C. 1988) (creditor waived right to setoff by failing to assert setoff in proof of claim).

In this case, DESC has waived its right to assert a setoff claim. Gold Line filed for bankruptcy on August 8, 1997. The bankruptcy court directed that all proofs of claim be filed by September 27, 2000. DESC never filed a proof of claim although it was well aware of the bankruptcy proceeding. Now, almost three and a half years after the bar date passed, DESC is attempting to assert a setoff claim against Gold Line. DESC's claim, however, is untimely. By waiting over three years after the bar date to assert a setoff claim, DESC has waived its right to setoff. Id. Therefore, DESC is not entitled to pursue its setoff claim.

D. DESC is Not Entitled to Recoupment

In the alternative, DESC asserts that it is entitled to recoup the alleged overpayments made for Gold Line's JP-4 deliveries under Contract No. DLA600-93-D-0562 against any

underpayments for Gold Line's JP-8 deliveries under the same contract. Recoupment is an equitable principle that allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff that arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim. See generally, United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc., 79 F.3d 393, 398 (5th Cir. 1996). The fact that identical parties are engaged in transactions of a similar subject matter may not be enough to permit recoupment. In re Gasmark, Ltd., 193 F.3d 371, 374 (5th Cir. 1999). The obligations must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligation. Id. at 374-75. In recoupment cases, the issue is not whether the claims arose out of the same contracts but rather whether the claims arose out of the same transactions. United States v. Dewey Freight Sys., Inc., 31 F.3d 620, 623 (8th Cir. 1994).

Recoupment is not appropriate in this case for several reasons. First, DESC's recoupment claim did not arise out of the same transaction as Gold Line's claim. DESC's recoupment claim arose out of the JP-4 deliveries while Gold Line's claim arose out of the JP-8 deliveries.

Second, permitting recoupment for alleged overpayments on Gold Line's JP-4 deliveries against the underpayment on Gold Line's JP-8 deliveries will not arrive at a just and proper liability determination. As discussed above, Gold Line has asserted a claim for underpayments in Gold Line II for the same JP-4 deliveries that are the subject of DESC's recoupment claim. In order to rule on any setoff claim in Gold Line I, the Court will have to rule on the validity of Gold Line's claim in Gold Line II. Gold Line's JP-4 claim, however, is not before the Court in Gold Line I. It would be inequitable for the Court to rule on DESC's counterclaim while Gold

Line's affirmative claim is the subject of another proceeding. Therefore, DESC is not entitled to assert recoupment in Gold Line I.

E. DESC's Affirmative Defenses are Barred Because the Payments Were Authorized

DESC's affirmative defenses of setoff and recoupment are barred because the alleged overpayments were authorized. In Barrett Refining Corp. v. United States, 242 F.3d 1055, 1064-65 (Fed. Cir. 2001), the Federal Circuit held that DESC could assert a claim for recovery of overpayments made pursuant to Clause B19.33 only to the extent that the overpayment exceeded the base contract price. Any payment made up to the base contract price is an authorized payment and is not an overpayment. Such payment is not subject to setoff or recoupment even if the base contract price exceeds fair market value. Id.; Barrett Refining Corp. v. United States, 50 Fed. Cl. 567, 568-69 (2001).

In this case, Gold Line disputes that DESC's payments exceeded the fair market value of the JP-4. Gold Line believes that DESC's payments were significantly less than the fair market value of the JP-4. Even if DESC's payments were more than fair market value, DESC's affirmative defenses of setoff and recoupment are barred if the amount of the payment does not exceed the contract base price.

## III. CONCLUSION

Gold Line would be unduly prejudiced by allowing DESC to assert its affirmative defense in this case. DESC is seeking to assert a government claim of setoff or recoupment for certain Gold Line JP-4 deliveries despite the fact that the issue of the fair market value of these deliveries is pending in Gold Line II. In addition, as discussed above, DESC is not entitled to setoff or recoupment. Therefore, Gold Line respectfully requests that the Court deny DESC's Motion to Amend Answer to Assert Affirmative Defense.

Respectfully submitted,

s/ Ronald H. Uscher
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 293-8815
(202) 293-7994 (facsimile)

Counsel for Plaintiff

*Of Counsel:*

Donald A. Tobin
Lori Ann Lange
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 293-8815
(202) 293-7994 (facsimile)

Dated: February 9, 2004

M:\flyd\002\Memorandum in Support of Opposition to Motion to Amend.doc