**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GOLD LINE REFINING, LTD., Through its Trustee Ben B. Floyd, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 98-543 |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL**
**DEFENDANT TO RESPOND TO DISCOVERY**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff moves this Court for an Order compelling Defendant to provide complete and responsive answers to the Plaintiff's Third Set of Interrogatories and to provide documents responsive to the Plaintiff's Third Request for Production of Documents.

I. FACTUAL BACKGROUND

The chronology of this discovery dispute is as follows:

1. On September 13, 2003, Plaintiff's Third Set of Interrogatories and Requests for Production of Documents ("Interrogatories and Document Requests") were served on the Defendant pursuant to RCFC Rules 26, 33 and 34. There were fifteen interrogatories and twenty-one document requests.

2. On October 24, 2003, Defendant submitted its Responses to Plaintiff's Interrogatories and Document Requests ("Responses"). Defendant's Responses included answers and/or objections

to Plaintiff's fifteen interrogatories. Each interrogatory had a companion document request. Defendant said it would produce documents at a time and place to be agreed upon.

3. On November 3, 2003, and December 7, 2003, Plaintiff inspected documents at the Defense Energy Support Center (DESC) at Ft. Belvoir, VA.

4. On February 4, 2004, Plaintiff wrote Defendant (Exhibit One) that its Responses were incomplete in three areas. Specifically, Defendant failed to answer questions and to produce documents about: (a) the phase-in of JP-8 as a replacement fuel for JP-4 on the U.S. Gulf Coast; (b) DESC's administration of the Small Disadvantaged Business (SDB) and Small Business Programs; and (c) Defendant's expert witnesses in similar pricing cases pending against DESC. Plaintiff requested Defendant voluntarily furnish answers and documents to avoid seeking relief from the Court.

5. On February 11, 2004, Defendant responded (Exhibit Two) to Plaintiff's February 4, 2004, letter. Defendant continued its objections. Defendant's objections are improper. Some of Defendant's answers are evasive.

6. The amount of damages is the only issue now before the Court. Defendant's answers and documents are material to the issue of damages. Defendant should be ordered to answer the interrogatories and to produce the requested documents.

## II. ARGUMENT

Plaintiff's questions and Defendant's answers or objections are reproduced below; followed by Plaintiff's reasons why Defendant should be compelled to answer and produce documents.

A. The Gradual Phase-In of JP-4 on the U.S. Gulf Coast

**Plaintiff's Interrogatory No. 3 Stated:**

State whether or not DFSC considered the gradual phase-in of JP-8, as a replacement fuel for JP-4 on the U.S. Gulf Coast, in issuance of the solicitation. If so, explain how the phase-in of JP-8 was considered. If not, explain why the phase-in was not considered.

**Defendant's Response To Interrogatory No. 3 Stated:**

Defendant objects to this interrogatory because the term "gradual phase-in" is vague, which makes the interrogatory incapable of a meaningful response. Defendant also objects to this interrogatory as irrelevant because it is not reasonably calculated to lead to the discovery of admissible evidence. The "phase-in" of JP-8 is not an issue in this case. The issues in this case are the authority to use Clause B19.33 and whether Gold Line was fairly compensated for its fuel.

**Plaintiff's February 4, 2004, Letter Stated:**

[The interrogatory] seeks information about whether or not DESC considered the gradual phase-in of JP-8 on the U.S. Gulf Coast for the April 15, 1993, issuance of Solicitation No. DLA600-93-R-0161. Defendant objected to this question saying the term "gradual phase in" was vague. Defendant also said the phase-in of JP-8 was not an issue in this case.

Attached is a copy of November 21, 1991, letter from General Stephen M. Bliss, DESC Commander. The letter describes DESC's "...plan to phase the conversion over several years with the initial deliveries to begin during October, 1993." The letter attaches a "JP-8 Conversion Chart" projecting JP-8 deliveries in four regions between October, 1993-September, 1997 and the issuance of solicitations between 1992-1994. Plaintiff's *quantum* case argues that because this was the first time DESC bought JP-8 on the U.S. Gulf Coast, there was no price history and no established market for JP-8. Plaintiff's interrogatory is directed at learning what DESC knew or considered about the conversion to JP-8 in Plaintiff's region during the delivery period of Plaintiff's contract. This line of inquiry is relevant to *quantum* and is reasonably calculated to lead to the discovery of admissible evidence.

For purposes of narrowing the scope of the interrogatory, and for producing documents, please consider the term "gradual phase in" to mean the period January 1, 1992 - December 31, 1997.

Please respond to the interrogatory by February 12, 2004.

**Defendant's February 11, 2004, Letter Stated:**

> Concerning the conversion to JP-8 jet fuel, your defining "gradual phase in" to mean "the period January 1, 1992 - December 31, 1997" is of no assistance to our understanding the inquiry in Interrogatory 4.3 of whether in issuing the solicitation "DFSC considered the gradual phase in of JP-8." Substituting your definition for the term "gradual phase in" does not clarify the inquiry. Further, as stated in our original response, the "phase in" of JP-8 is not an issue in this case and information about the conversion to JP-8 is neither relevant nor calculated to lead to the discovery of admissible evidence upon the issues in this case - the authority to the use clause B19.33 and whether Gold Line was fairly compensated for its fuel. Your assertions that "this was the first time DESC bought JP-8 on the U.S. Gulf Coast" and that "there was no price history, no established market for JP-8" do not explain why your desire to know what the Defense Energy Support Center ("DESC") knew and considered about the conversion to JP-8 is relevant to whether the clause B19.33 is authorized and whether Gold Line was fairly compensated for its fuel. In any event, among the documents that we produced and that you inspected were all of the JP-8 conversion documents that DESC possesses.

**Defendant Should Be Compelled To Answer Interrogatory No. 3**

Defendant's objection to Interrogatory No. 3 claiming that "the term 'gradual phase-in' is vague, which makes the interrogatory incapable of a meaningful response" is without merit and evasive. Plaintiff's February 4, 2004 response to Defendant's objection defines the term "gradual phase in" and limits the time frame. Moreover, Plaintiff attached a November 21, 1991, letter from General Stephen Bliss, the DESC Commander, explaining DESC's plan "...to phase the conversion over several years with the initial deliveries to begin during October, 1993." The DESC <u>JP-8 Conversion Chart</u> attached to General Bliss' letter says the first JP-8:

> (1) solicitation for the U.S. Gulf Coast is expected to be issued in April, 1993;
> (2) awards for the U.S. Gulf Coast are expected to made in September, 1993; and
> (3) deliveries for the U.S. Gulf Coast are expected to begin in April, 1994.

In fact: (1) DESC issued Solicitation No. DLA600-93-R-0161 on April 15, 1993; (2) Plaintiff's contract (DLA600-93-D-0562) was awarded on September 8, 1993; and (3) Plaintiff's JP-

8 deliveries occurred between April and December, 1994. In short, in late 1991 DESC made accurate projections about the timing for the phase-in of JP-8 on the U.S. Gulf Coast two years later. Yet Defendant continues to maintain that Plaintiff's definition of the "term 'gradual phase-in' does not clarify the inquiry.

In this first-time-ever purchase of JP-8, Defendant now seeks to deny Plaintiff evidence about what DESC knew about the logistics, availability, and pricing of this new fuel. Did DESC expect full or partial coverage of its first JP-8 requirements on the U.S. Gulf Coast? Did DESC project the cost of JP-8 on the U.S. Gulf Coast? This information is relevant to the fair market value of the JP-8 Plaintiff delivered during this first-time purchase of JP-8 on the U.S. Gulf Coast.

Defendant's attempt to avoid a responsive answer, by claiming ignorance of the term "gradual phase-in," should not be condoned. Defendant's second objection that the interrogatory is irrelevant "because it is not reasonably calculated to lead to the discovery of admissible evidence" is equally without merit. Defendant should be compelled to answer the interrogatory. Rule 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

B. DESC's Administration of the Small Disadvantaged Business and Small Business Programs

**Plaintiff's Interrogatory No. 15 Stated:**[1]

With respect to the Defense Logistics Agency's (DLA) December 13, 1994 Notice of Proposed Rulemaking proposing to reduce the maximum available SDB evaluation preference from ten percent (10%) to five percent (5%) on procurements conducted by the DFSC. See 59 Fed. Reg. 64185 (1994);

(a) Identify persons who have knowledge of this proposed rule.

(b) State why the proposed rule was directed only to the DFSC, a single field activity of DLA. Explain why none of the other five (5) DLA supply centers (Defense Construction Supply Center, Defense Electronics Supply Center, Defense General Supply Center, Defense Industrial Supply Center, or Defense Personnel Support Center), or other DOD components, were not covered by the proposed rule.

**Defendant's Response to Interrogatory No. 15 Stated:**

Defendant objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. The requested information concerns a never-adopted, proposed rule and has nothing to do with the issues in this case, which are the authority to use Clause B19.33 and whether Gold Line was fairly compensated for its fuel.

[1] Document Request No. 19 was the companion to Interrogatory No. 15. It sought all documents relating to DLA's December 13, 1994 Notice of Proposed Rulemaking. Defendant objected saying the Request was not reasonably calculated to lead to the discovery of admissible evidence and that the "requested information concerns a never-adopted, proposed rule and has nothing to do with the issues in this case, which are the authority to use Clause B19.33 and whether Gold Line was fairly compensated for its fuel."

**Plaintiff's Interrogatory No. 16 Stated:2**

Identify and explain any action by DFSC to assist small and minority refiners impacted by the conversion from JP-4 type jet fuel to JP-8 type jet fuel, as mandated by a Conference Committee finding that:

> The conferees have carefully reviewed the economic, readiness and safety issues connected with the Air Force decision to fully transition from the use of JP-4 to JP-8 fuels for its aircraft. While the conferees support this decision, they are cognizant of the safety risks associated with the transition process itself <u>and the dislocation caused to small JP-4 refiners brought about by this necessary decision.</u>
>
> Therefore, the conferees direct that the Air Force, in conjunction with the Defense Fuel Supply Center <u>report to the Committees on Appropriations of the Senate and the House no later than 30 days following the enactment of this Act, on the ways in which they intend to assist small refiners and associated minority businesses to transition from the production and distribution of JP-4 fuel to JP-8 fuel. The conferees believe the Air Force and DFSC have a responsibility to those companies, with which it has a long-standing relationship, to find ways to ease the economic burdens associated with fuel conversion.</u>
>
> 139 Cong. Rec. H 11,537 (1992) (emphasis added).

Identify persons who possess knowledge of any DFSC action to assist small and minority refiners.

**Defendant's Response to Interrogatory No. 16 Stated:**

2 Document Request No. 20 was the companion to Interrogatory No. 16. It sought all documents relating to the conference committee statement and DESC actions to assist small and minority refiners. Defendant objected saying the information concerns efforts to reduce the impact of the conversion from JP-4 to JP-8 and has nothing to do with the issues in this case, which are the authority to use Clause B19.33 and whether Gold Line was fairly compensated for its fuel.

Defendant objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. The requested information concerns efforts to reduce the impact of the conversion from JP-4 to JP-8 and has nothing to do with the issues in this case, which are the authority to use Clause B19.33 and whether plaintiff was fairly compensated for its fuel.

**Plaintiff's February 4, 2004, Letter Stated:**

[Interrogatories 15 and 16] seek information about the SDB Program and how DESC administered that program, including a DESC proposal in the *Federal Register* to reduce the SDB premium from ten percent to five percent. Defendant objected to both interrogatories saying they have nothing to do with the issues in this case and are not calculated to lead to the discovery of admissible evidence.

Please note that: (1) Plaintiff was an SDB contractor; (2) Plaintiff's contract contained SDB premiums; and (3) Plaintiff's *quantum* case includes SDB premiums. Moreover, under *Urban Data Systems v. United States*, 699 F. 2d 1147 (Fed. Cir. 1983) price advantages that accrue to bidders with special status [SDB] in the federal procurement process should be considered in determining fair market value. Accordingly, how DESC administered the SDB program, including efforts to reduce SDB premiums, are relevant to Plaintiff's *quantum* case.

**Defendant's February 11, 2004, Letter Stated:**

Concerning the small disadvantaged business ("SDB") premium program, you refer to Interrogatories [15] and [16]. Interrogatory 4.16, however, does not inquire about the SDB premium program. As you know, Interrogatory 4.15 inquires about a proposal to reduce the SDB premium from ten percent to five percent. You know also that the proposal was never adopted. As stated in our original response to Interrogatory 4.15, "[t]he requested information concerns a never adopted proposed rule and has nothing to do with the issues in this case, which are the authority to use clause B19.33 and whether Gold Line was fairly compensated for its fuel." Although in your letter you state that "how DESC administered the SDB program. . . [is] relevant to plaintiff's *quantum* case," your interrogatory inquires about a never adopted proposal that did not become part of the SDB program. You provide no explanation as to why a proposal that was never adopted has any relevance or connection to whether DESC was authorized to use clause B19.33 or whether Gold Line was fairly compensated for its fuel. In any event, as you know, Gold Line received the benefit of the SDB premium program. Further, among the documents that we produced and you inspected was the bid evaluation model, which contains information about how the SDB premium program was administered and applied.

**Defendant Should Be Compelled To Answer Interrogatories 15 and 16.**

The facts surrounding the Small Business and SDB Programs, and their administration by DESC, are material to Plaintiff's case. Under both the law and the contract, Plaintiff was entitled to an evaluation preference of up to ten percent (10%).[3] Congress enacted the SDB Program, and put the ten percent preference in the statute, as applicable to all components of the Department of Defense; from base procurement offices to major procurement commands in all of the military services and defense agencies. All were subject to the same SDB Program. All were subject to the same ten percent preference. Only one: DESC undertook to reduce the ten percent preference by public pronouncement in the *Federal Register.*

Plaintiff was an SDB contractor; Plaintiff's contract contained SDB premiums; and Plaintiff's *quantum* case includes SDB premiums. Defendant's argument that the "requested information concerns a never adopted proposed rule and has nothing to do with the issues in this case" misses the point. Defendant's attempt to thwart the law is *prima facie* evidence of bias against the SDB Program. The fact that Defendant's attempt did not succeed does not make the evidence of bias any less probative. Plaintiff is entitled to pursue this evidence in discovery. Defendant should be compelled to answer the interrogatory and produce the requested documents.

[3] 10 U.S.C.§ 2323 (e); Section 1207 of Public Law 99-661; Section 806 of Public Law 100-180 (1987) and Section 831 of Public Law 101-189 (1989) as implemented by DFARS Subpart 219.70, *Evaluation Preference For Small Disadvantaged Business (SD B).*

C. Defendant's Experts In Similar Cases

**Plaintiff's Document Request No. 21 Stated:**

For each person whom Defendant expects to call as an expert witness (including but not limited to Dr. George Schink and Mr. C. Alan Stevens), in all cases pending in the U.S. Court of Federal Claims concerning the EPA clause in DFSC contracts:

(a) Produce all expert reports, affidavits, declarations or other writing prepared by the expert relating to the EPA clause in DFSC contracts or to valuation of liquid petroleum products, including but not limited to jet fuel.

(b) Produce all recorded testimony by the expert relating to the EPA clause in DFSC contracts or to the valuation of liquid petroleum products, including but not limited to jet fuel.

(c) Produce all publications, articles, essays, books, and treatises published by the expert relating to the EPA clause in DFSC contracts or to the valuation of liquid petroleum products, including but not limited to jet fuel.

(d) Produce all documents providing guidance to Defendant's experts.

**Defendant's Response to Document Request No. 21 Stated:**

As to any person whom defendant may call to testify as an expert in another pending case, defendant objects to the request because it is not reasonably calculated to lead to the discovery of admissible evidence. Defendant has previously provided information about the expert it plans to call in this case in response to plaintiff's three prior discovery requests.

**Plaintiff's February 4, 2004, Letter Stated:**

Document Request [No. 21] seeks documents (reports, affidavits, testimony, publications, etc.) about Defendant's expert witnesses, in this case, and in similar DESC EPA cases pending in the U.S. Court of Federal Claims. Defendant objected to this request as not calculated to lead to the discovery of admissible evidence. As you know, more than twenty cases have been filed against Defendant because of Defendant's EPA clause. These cases all center on the operation of Defendant's EPA clause, including the valuation of petroleum products. Defendant's expert, Stancil & Co., prepared several reports and affidavits in this case.

> Defendant may have retained different experts, in other EPA cases, who wrote reports, affidavits or opinions about the EPA clause or the valuation of petroleum products. What Defendant's experts said, in other cases, is relevant to *quantum* issues in this case. At the very least, such evidence may permit the impeachment of Stancil & Co.
>
> Please produce these documents by February 12, 2004.

**Defendant's February 11 2004, Letter Stated:**

> Concerning document request [21], you offer no explanation for how the opinions, and related documents, of other experts in other cases could in any way lead to the discovery of admissible evidence in this case. The only example you provide, that another expert may impeach our expert in this case, in unpersuasive. The work of another expert in another case would be inadmissible in this case and could not, even if admissible, impeach the opinion of our expert in this case. As to the expert that we plan to call to testify in this case, as stated in our original response to document request 4.21, we have previously provided information about our expert in this case in response to plaintiff's three prior discovery requests.

**Defendant Should Be Compelled To Produce The Requested Documents**

Defendant retained an expert witness in this case. Defendant's expert witness prepared an expert report under RCFC 26. Plaintiff deposed Defendant's expert.

More than twenty other cases against Defendant have been filed, all relating to the operation of Defendant's EPA clause. In these other cases, Defendant may have retained the same expert as in this case, or perhaps different experts. These experts may have prepared reports, affidavits or rendered opinions about Defendant's EPA clause or the valuation of jet fuel. What Defendant's other experts said is relevant to the valuation issues facing Plaintiff and could serve to impeach Defendant's expert here. Finally, Defendant says this evidence need not be produced as it "would be inadmissible." Admissibility of evidence at trial is not the standard for the discovery of relevant information. A party's discovery must only be reasonably calculated to lead to the discovery of admissible evidence. RCFC 26.

Defendant should be compelled to produce the documents sought by Plaintiff's Document Request No. 21.

**RULE 37(a)(2)(B) CERTIFICATION**

Pursuant to Rule 37(a)(2)(B), Plaintiff's counsel certifies that he conferred in good faith with the Defendant in an effort to resolve the matters set forth in this Motion and to secure the information and/or material without Court action. On February 4, 2004, counsel for Plaintiff faxed a letter to counsel for the Defendant setting forth in detail all of the issues contained in this Motion (Exhibit One). Defendant responded by letter of February 11, 2004. However, Defendant did not provide complete discovery or substantially justified objections (Exhibit Two).

## III. CONCLUSION

For the foregoing reasons, Plaintiff requests the Court to issue an Order compelling Defendant, within five days, to furnish complete interrogatory answers and to produce documents responsive to Plaintiff's September 13, 2003, Interrogatories and Document Requests as follows:

A. Interrogatories No. 3, 15 and 16 and

B. Document Requests No. 19, 20 and 21.

Respectfully submitted,

s/ Ronald H. Uscher

Ronald H. Uscher
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21 Street, N.W., Suite 500
Washington, DC 20036
(202) 293-8815
(202) 293-7994 (FAX)

Counsel for Plaintiff

Of Counsel:

Donald A. Tobin
Lori Ann Lange
Bastianelli, Brown & Kelley, Chtd.
Two Lafayette Centre
1133 21 Street, N.W., Suite 500
Washington, DC 20036

Dated: March 11, 2004

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of March 2004, the foregoing Motion to Compel Defendant to Answer Interrogatories and Respond to Request for Production of Documents and Memorandum in Support of Plaintiff's Motion to Compel Defendant to Respond to Discovery was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Ronald H. Uscher