U.S. Department of Justice

Civil Division

DMC:RTBlades
154-98-543

Telephone: (202) 514-7300
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

February 11, 2004

BY MESSENGER

Ronald H. Uscher, Esquire
Bastianelli, Brown, Touhey & Kelley, Chtd.
Two Lafayette Centre
1133 21st Street, N.W.
Suite 500
Washington, D.C. 20036
Telephone: (202) 293-8815

Re: Gold Line Refining, Ltd. v. United States, No. 98-543 C (Ct. Fed. Cl.)

Dear Mr. Uscher:

Thank you for your February 4, 2004 letter concerning our responses to some of your discovery requests. We address each of your concerns.

Concerning the conversion to JP-8 jet fuel, your defining "gradual phase in" to mean "the period January 1, 1992-December 31, 1997" is of no assistance to our understanding the inquiry in Interrogatory 4.3 of whether in issuing the solicitation "DFSC considered the gradual phase in of JP-8." Substituting your definition for the term "gradual phase in" does not clarify the inquiry. Further, as stated in our original response, the "phase in" of JP-8 is not an issue in this case and information about the conversion to JP-8 is neither relevant nor calculated to lead to the discovery of admissible evidence upon the issues in this case - the authority to use clause B19.33 and whether Gold Line was fairly compensated for its fuel. Your assertions that "this was the first time DESC bought JP-8 on the U.S. Gulf Coast" and that "there was no price history, no established market for JP-8" do not explain why your desire to know what the Defense Energy Support Center ("DESC") knew and considered about the conversion to JP-8 is relevant to whether the clause B19.33 is authorized and whether Gold Line was fairly compensated for its fuel. In any event, among the documents that we produced and that you inspected were all of

EXHIBIT
2

---

the JP-8 conversion documents that DESC possesses.

Concerning the small disadvantaged business ("SDB") premium program, you refer to Interrogatories 4.15 and 4.16. Interrogatory 4.16, however, does not inquire about the SDB premium program. As you know, Interrogatory 4.15 inquires about a proposal to reduce the SDB premium from ten percent to five percent. You know also that the proposal was never adopted. As stated in our original response to Interrogatory 4.15, "[t]he requested information concerns a never adopted proposed rule and has nothing to do with the issues in this case, which are the authority to use clause B19.33 and whether Gold Line was fairly compensated for its fuel." Although in your letter you state that "how DESC administered the SDB program . . . [is] relevant to plaintiff's *quantum* case," your interrogatory inquires about a never adopted proposal that did not become part of the SDB program. You provide no explanation as to why a proposal that was never adopted has any relevance or connection to whether DESC was authorized to use clause B19.33 or whether Gold Line was fairly compensated for its fuel. In any event, as you know, Gold Line received the benefit of the SDB premium program. Further, among the documents that we produced and you inspected was the bid evaluation model, which contains information about how the SDB premium program was administered and applied.

Concerning document requests 4.7, 4.8, 4.10, and 4.11, we produced and you inspected all documents as indicated in our original responses: "documents relating to Gold Line" (4.7); "abstracts, evaluations, and the bid evaluation model" (4.8); "documents related to [defendant's] use of the PMM in bulk fuels program contracts" (4.10); "documents related to [defendant's] use of economic price adjustment clauses in bulk fuels program contracts" (4.11).

Concerning document request 4.21, you offer no explanation for how the opinions, and related documents, of other experts in other cases could in any way lead to the discovery of admissible evidence in this case. The only example you provide, that another expert may impeach our expert in this case, is unpersuasive. The work of another expert in another case would be inadmissible in this case and could not, even if admissible, impeach the opinion of our expert in this case. As to the expert

that we plan to call to testify in this case, as stated in our original response to document request 4.21, we have previously provided information about our expert in this case in response to plaintiff's three prior discovery requests.

If you have any questions or want to discuss any aspect of this case, please call me. Thank you for your cooperation in this matter.

Very truly yours,

Reginald T. Blades, Jr.

Reginald T. Blades, Jr.
Senior Trial Counsel
Commercial Litigation Branch