BASTIANELLI, BROWN & TOUHEY
CHARTERED
2828 PENNSYLVANIA AVENUE, N. W.
WASHINGTON, D. C. 20007
(202) 338-8088

ADRIAN L. BASTIANELLI, III
J. MITCHELL BROWN *
JAMES A. KELLEY*
SCOTT A. LIVINGSTON +
ANTHONY J. McMAHON +
LAWRENCE C. MELTON *
CHARLES M. REIFEL
GEORGE W. STIFFLER
DONALD A. TOBIN
THOMAS J. TOUHEY
RONALD H. USCHER
NELSON LEE BAIN
PHILIP H. M. BEAUREGARD +
NICK R. HOOGSTRATEN +
LORI ANN LANGE ‡

COUNSEL
H. CLAYTON COOK, JR.
MARCUS W. SISK, JR.

* ALSO ADMITTED IN VIRGINIA
+ ALSO ADMITTED IN MARYLAND
‡ ONLY ADMITTED IN MARYLAND

ALSO OFFICES IN
BALTIMORE, MARYLAND
(410) 837-5206 AND
FALLS CHURCH, VIRGINIA
(703) 971-4618

FACSIMILE
(202) 338-1843

November 22, 1994

**BY TELECOPY (703) 274-4608 AND BY MAIL**

Ms. Edith P. Duhaine
Contracting Officer
Defense Fuel Supply Center
Bulk Fuels Division
Directorate of
Contracting and Production
Cameron Station
Alexandria, VA 22304-6610
Attn: DFSC-PZC

**RE: REQUEST FOR AMENDMENT OF REFERENCE PRICES**
**Contract No. DLA600-94-D-0562, Gold Line Refining, Ltd.**

Dear Ms. Duhaine:

This firm represents Gold Line Refining, Ltd ("Gold Line") of Houston, Texas.

## I. INTRODUCTION

We respectfully request that Gold Line's contract be amended to include substitute reference prices for determining monthly price adjustments under Clause B19.33. Final reference prices for April, May, June, and July 1994 fail to reflect actual market conditions. Moreover, this trend is continuing into the present.

We request a meeting with DFSC, early next week, to discuss this problem in more detail.

We will review at the meeting the reasons for our request, including: (1) an explanation of the reference prices in question, (2) the contractual authority for an amendment without consideration and (3) the applicable regulations and case law in support of a contract amendment.

EXHIBIT
ONE

## II. BACKGROUND

Solicitation No. DLA-600-93-R-0161 (solicitation) was issued by DFSC on April 15, 1993. Offers were requested on bulk petroleum products for Inland/West Coast and East/Gulf Coast requirements, including JP-8 and JP-4.

On September 8 and September 27, 1993, Gold Line was awarded Contract No. DLA600-93-D-0562 for JP-4 (Inland). The JP-8 volume was awarded on October 6, 1993.

The solicitation and contract contain Clause B19.33, Economic Price Adjustment - Published Market Price (Domestic Bulk) (DFSC Nov 1992) by which the contract's base (unit) price is adjusted in accordance with a reference price selected by DFSC. DFSC selected Petroleum Marketing Monthly ("PMM") as the reference price at Part A of clause B19.33. PMM is a publication of The Department of Energy's Energy Information Administration.

Clause B19.33, Part D, requires the offeror's base (unit) price to be adjusted upward or downward, cent for cent, by adding or subtracting the difference between the base reference price and the reference price in effect on the date of delivery.

Current JP-8 and JP-4 market information illustrates that the reference prices as published by PMM for April, May, June, and July 1994 do not reflect market conditions within the meaning of Clause B19.33, Part B, Subparagraph (c). We will demonstrate this in more detail at the meeting with DFSC.

The inequity here is that DFSC, not Gold Line, selected PMM as the reference price. Offerors were required to rely on its accuracy, including its continued "method of calculation," See Clause B19.33, Part B, subparagraph (c). That "method of calculation" now fails to reflect actual market activity. The contract provides relief for precisely this situation by substituting a comparable reference price.

## III. AN ECONOMIC PRICE ADJUSTMENT CLAUSE PROTECTS BOTH PARTIES

The use of an economic price adjustment (EPA) provision, in petroleum procurements, is the means by which market risk is allocated between a contractor and the Government. Absent such a provision, the contractor bears the risk. Cobra, S.A., ASBCA No.

28146, 84-3 BCA ¶17,535 (1984). An EPA provision should, in theory, provide stability to a contractor in a market otherwise unpredictable. The FAR guidance on such provisions states, at §16.203-2, that:

> A fixed-price contract with economic price adjustment may be used when (i) there is serious doubt concerning the stability of market or labor conditions that will exist during an extended period of contract performance, and (ii) contingencies that would otherwise be included in the contract price can be identified and covered separately in the contract.
>
> * * *
>
> (a) In establishing the base level from which adjustment will be made, the contracting officer shall ensure that contingency allowances are not duplicated by inclusion in both the base price and the adjustment requested by the contractor under economic price adjustment clause. (Emphasis added)

The use of indices as the basis for price adjustments is contemplated by FAR §16.203-(1)(c). The DFARS guidance on such indices appears at DFARS §16.203-4(d)(3). This provision describes the basic principles required to provide a contractor protection from volatile market fluctuations. It provides:

> (iii) Normally, the clause should cover all potential economic fluctuations within the original period of performance; (iv) The clause must have a positive and accurate identification of the applicable index(es) upon which adjustments will be based and provide appropriate economic fluctuation in the event of the discontinuance of the publication or the movement of the designated index. . . . (v) An index should be structured to encompass a large sample of relevant items yet bear a logical relationship to the type of contract costs being measured. (Emphasis added)

**IV. IN ANTICIPATION OF A PROBLEMATIC REFERENCE PRICE GOLD LINE'S EPA CLAUSE PROVIDES A REMEDY**

In recognition of the fact that changing market conditions may foil the intention of the EPA clause, the contract provides authority to substitute another published reference price.

Subparagraph (c) of Part B of Clause B19.33 provides for substitution of a new reference price in the event the applicable published reference price is substantially altered. The provision states:

> In the event the reference price or interim reference prices is discontinued, <u>or its method of calculation is altered substantially, the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described herein.</u> This contract shall be amended to reflect such substitute reference price or interim reference price, effective on the date the prior reference price or interim reference price is discontinued or altered. In the event the parties fail to agree on an appropriate substitute, the matter shall be resolved in accordance with the DISPUTES clause of the contract. (Emphasis added)

**V. CONCLUSION**

The purpose of the contract's EPA clause is to protect Gold Line and DFSC against significant changes in petroleum prices. In return for this protection Gold Line promised that its unit prices would not include contingencies to cover possible price increases in reference prices. See Clause B19.33 (Preface).

Clause B19.33 recognizes that the reference prices, selected by DFSC may become unsuitable because of changes in their make-up. That is what happened here.

Under these circumstances the contract authorizes the issuance of a contract amendment to substitute corrected reference prices. Gold Line respectfully submits that comparable

reference prices should be established by mutual agreement with DFSC.

Accordingly, we request the opportunity to meet with DFSC, early next week, to discuss a bilateral contract amendment.

Please call me to confirm a convenient date.

Very truly yours,

Ronald H. Uscher
Attorney for
Gold Line Refining, Ltd.

cc: Mr. Earl Thomas
General Partner
Gold Line Refining, Ltd.

common\gdlr\003\10.ltr

# GOLD LINE REFINING, LTD.

## JP-8 BILLING PRICE COMPARISONS: CONTRACT NO. DLA600-93-D-0562




| Month of Delivery | APRIL | MAY | JUNE | JULY |
|---|---|---|---|---|
| UNIT PRICE | $0.542864 | $0.553764 | $0.558114 | $0.585964 |
| FINAL UNIT PRICE | $0.525700 | $0.531700 | $0.546200 | $0.562700 |
| PROJECTED PRICE (OPIS) | $0.579115 | $0.584815 | $0.598702 | $0.620320 |

50% Houston IAH Contract Jet Average plus 50% Linden, NJ Contract Jet Average was used to reflect the OPIS market.

# GOLD LINE REFINING, LTD.

## JP-8 PRICE COMPARISONS: CONTRACT NO. DLA600-93-D-0562




| Month of Delivery | APRIL | MAY | JUNE | JULY |
|---|---|---|---|---|
| NEW INTERIM PRICE | $0.535400 | $0.546300 | $0.550650 | $0.578500 |
| NEW BASE PRICE (PMM) | $0.487500 | $0.493500 | $0.508000 | $0.524500 |
| OPIS MKT. PRICE | $0.540915 | $0.546615 | $0.560502 | $0.582120 |

50% Houston IAH Contract Jet Average plus 50% Linden, NJ Contract Jet Average was used to reflect the OPIS market.

# NEGATIVE IMPACT ON GOLD LINE

JP-8 FINAL PRICE ADJUSTMENTS: CONTRACT NO. DLA600-93-D-0562



# GOLD LINE REFINING, LTD.

## CRUDE COSTS




| Month | March | April | May | June | July |
|---|---|---|---|---|---|
| Price Per Barrel | $13.04839 | $14.73330 | $16.63710 | $17.29167 | $17.60700 |

Gold Line's crude costs are based on Koch Oil's monthly average posting for South Louisiana Sweet.

# NEGATIVE IMPACT ON GOLD LINE

| MONTH | ORIGINAL REVENUE | FINAL ADJ. REVENUE | PROJ. FINAL REVENUE | LOSS TO GOLD LINE |
|---|---|---|---|---|
| APRIL | $2,137,175.04 | $2,069,876.67 | $2,270,653.16 | ($200,776.49) |
| MAY | $2,849,252.56 | $2,735,727.83 | $3,009,017.62 | ($273,289.79) |
| JUNE | $2,558,458.76 | $2,503,843.61 | $2,744,518.82 | ($240,675.21) |
| JULY | $2,601,664.34 | $2,498,372.80 | $2,754,204.05 | ($255,831.25) |
| **TOTAL:** | **$10,146,550.70** | **$9,807,820.91** | **$10,778,393.66** | **($970,572.75)** |

| | PROJECTION |
|---|---|
| APR | $133,478.12 |
| MAY | $159,765.06 |
| JUN | $186,060.06 |
| JUL | $152,539.71 |
| **PROJECTED TOTAL ADJ.:** | **$631,842.96** |
| | ACTUAL |
| APR | ($67,298.37) |
| MAY | ($113,524.73) |
| JUN | ($54,615.15) |
| JUL | ($103,291.54) |
| **TOTAL ADJUSTMENT:** | **($338,729.79)** |