IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GOLD LINE REFINING, LTD., through its trustee Ben B. Floyd,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 98-543 C
(Judge Hewitt)

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

We oppose the request of plaintiff ("Gold Line") to compel further discovery responses, and we respectfully request the Court to deny Gold Line's request.

Our responses, including objections, to Gold Line's discovery requests were proper. Gold Line provides no basis for its request that we provide further response or produce additional documents. Gold Line's request should be denied.

STANDARD OF REVIEW

Motions to compel discovery are committed to the sound discretion of the trial court. International Graphics Div. of Moore Business Forms, Inc. v. United States, 3 Cl. Ct. 715, 717 (1983). Courts are obliged, in deciding motions to compel, to consider Rule 1, which provides for the "just, speedy, and inexpensive" determination of every action. Id., citing Herbert v. Lando, 441 U.S. 153, 177 (1979). See also Catellus Development Corp. v. United States, 26 Cl. Ct. 210, 213-14 (1992); Reliance Insurance Co. v. United States, 18 Cl. Ct. 359, 360 (1989). The rules requiring that material sought in discovery be "relevant" are to be "firmly applied." Id.

Gold Line has identified three discovery requests to which it seeks further response. We address each in turn.

CONVERSION TO JP-8

In its interrogatory number 4.3,[1] Gold Line requested whether, in issuing the solicitation, DESC had considered the gradual phase-in of JP-8 as a replacement fuel for JP-4 upon the United States Gulf Coast. In addition to objecting because we did not know what Gold Line meant by "gradual phase-in", we objected to the request as irrelevant because it is not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, in producing documents for Gold Line's inspection and copying, we produced all of the JP-8 conversion documents that DESC possesses.[2]

As the Court is aware, the two overarching issues in this case are whether clause B19.33, Economic Price Adjustment – Published Market Price, of Gold Line's contract is authorized and whether Gold Line was fairly compensated for the fuel that it delivered under the contract.[3] Whether, and if so, in what

[1] The discovery requests at issue were part of Gold Line's fourth set of discovery requests. Because the requests in each of Gold Line's four sets of requests were numbered beginning with "1", we adopted the convention of identifying discovery requests with a prefix that identified the set in which a request was contained. For example, interrogatory number 3 in the fourth set of requests is identified as interrogatory number 4.3.

[2] The documents explain that the Government phased-in its purchasing of JP-8 by geographic region.

[3] Another dispositive issue is whether Gold Line waived any ability to challenge the propriety of clause B19.33. As the Court is aware, the issues of propriety and waiver are currently

manner, the Government, in issuing the solicitation under which Gold Line's contract was awarded, considered a "gradual" phase-in for its purchasing of JP-8 bears no relationship or connection to either issue. Gold Line argues that whether the Government considered this "gradual" phase-in is somehow connected to determining whether Gold Line received fair compensation for the fuel that it delivered under the contract. Gold Line, however, does not explain this asserted connection, in either its motion or its correspondence objecting to our discovery responses. Under the contract, Gold Line delivered both JP-4 and JP-8, and received a total of $60,380,452. The amount that Gold Line received for the fuel that it delivered under the contract either does or does not represent fair compensation for that fuel, regardless of whether, in issuing the solicitation, the Government considered a "gradual" phase-in for purchasing JP-8.

Gold Line attempts to argue further that the information requested is relevant to the "fair market value" of the JP-8 that Gold Line delivered under the contract. Gold Line's motion at 5. Gold Line posits a new description of the information that it seeks and poses some questions that the information might answer. Interrogatory number 4.3, however, does not request the information identified, and Gold Line did not ask the questions that it now poses. In any event, as the Court is aware, Gold Line has already submitted the reports of Baker & O'Brien, the

pending before the court of appeals in Tesoro Hawaii Corporation v. United States, No. 04-5064 (Fed. Cir.).

firm that Gold Line hired to opine upon the value of the fuel that Gold Line delivered under the contract. In its reports, Baker & O'Brien did not indicate any need for the information that Gold Line is requesting and did not qualify any of its opinions as conditioned upon receiving additional information about a phase-in for purchasing JP-8. Baker & O'Brien in no way indicated or suggested that the information that Gold Line seeks was in any way relevant, important, or remotely related to the development of Baker & O'Brien's opinion regarding the value of the fuel that Gold Line delivered under the contract.

Moreover, in its motion, Gold Line recites the circumstances surrounding the conversion to JP-8, citing to documents to support its recitation, indicating that Gold Line is fully aware of the information related to the phase-in. This is not surprising because, as we indicated, we produced for Gold Line's inspection and copying all of the JP-8 conversion documents that DESC possesses.

Because the information that Gold Line requests is not relevant to any issue in this case or reasonably calculated to lead to the discovery of admissible evidence, and because we have already produced all JP-8 conversion documents that DESC possesses, Gold Line's request that we be compelled to provide further response or production of documents should be denied.

SMALL DISADVANTAGED BUSINESS PROGRAM

Next, Gold Line requests the Court to compel further response or production of documents in connection with a December

13, 1994 notice of proposed rule making concerning the maximum available small disadvantaged business evaluation preference and any action taken by DESC to assist small and minority refiners affected by the conversion to JP-8. None of the requested information is relevant to any issue in this case or reasonably calculated to lead to the discovery of admissible evidence. Gold Line's request should be denied.

As Gold Line states, at page 9 of its motion, "Plaintiff was an SDB contractor; Plaintiff's contract contained SDB premiums; and Plaintiff's *quantum* case includes SDB premiums." Gold Line fails to explain, however, the relevance to the issues in this case of a December 13, 1994 notice of proposed rule making (for a rule that was never adopted) or what actions DESC took to assist small and minority refiners affected by the conversion to JP-8. Without explanation, Gold Line attempts to link the requested information with DESC's administration of the small disadvantaged business program and alleges that DESC was biased against small businesses. Gold Line continues to fail, however, to link those topics with any issue in this case. In any event, among the documents that we produced for Gold Line's inspection and copying was the bid evaluation model, which contains the information about how the small disadvantaged business premium program was administered and applied to the solicitation under which Gold Line's contract was awarded.

As Gold Line states, it was awarded the contract as a small disadvantaged contractor, and in obtaining the award of the

contract, Gold Line received the benefit of the contract price evaluation premium applied to increase the competitiveness of small disadvantaged bidders. The issues in this case do not include, and never have included, any challenge to the way in which DESC administered the small disadvantaged business program in issuing the solicitation and evaluating the bids of small disadvantaged bidders, or, in particular, in awarding a contract to Gold Line as a small disadvantaged contractor. The issues in this case do not include, and never have included, any challenge that Gold Line did not receive all of the payments required under the contract. The issues in this case do not include, and never have included, whether Gold Line was in any way treated unfairly because it was a small disadvantaged business. In any event, none of that has any relevance or connection to the issues in this case: the propriety of clause B19.33, which was included in the solicitation and in all contracts awarded under the solicitation, regardless of whether the contractor was a small disadvantaged business, or whether Gold Line received fair compensation for the fuel that it delivered under the contract.

Further, Gold Line defies reason by suggesting that a proposal to change the law is an effort to "thwart" the law and "*prima facie* evidence of bias." In any event, as Gold Line states, at pages 4 to 5 of its motion, DESC issued the solicitation on April 15, 1993, awarded the contract on September 8, 1993, and all deliveries under the contract were completed by December 1994. Gold Line provides no explanation as to how a

notice of proposed rulemaking published December 13, 1994, after contract performance had been completed, can have any relevance or be reasonably calculated to lead to the discovery of any admissible evidence upon the contract issues in this case.

Moreover, as established above in discussing the irrelevance of the conversion to JP-8, Baker & O'Brien has issued its reports opining upon the value of the fuel that Gold Line delivered under the contract. Although, in developing its opinions, Baker & O'Brien recognized and considered Gold Line's status as a small disadvantaged business, Baker & O'Brien did not indicate any need for the information that Gold Line is requesting and did not qualify any of its opinions as conditioned upon receiving additional information about the small disadvantaged business program or DESC's administration of that program. Baker & O'Brien in no way indicated or suggested that the information that Gold Line seeks was in any way relevant, important, or remotely related to the development of Baker & O'Brien's opinions regarding the value of the fuel that Gold Line delivered under the contract.

Because the information that Gold Line requests is not relevant to any issue in this case or reasonably calculated to lead to the discovery of any admissible evidence upon any issue in this case, and because we have already produced the information about how the small disadvantaged business premium program was administered and applied, Gold Line's request that we be compelled to provide further response or production of

documents should be denied.

OTHER EXPERTS

Finally, Gold Line requests information about other experts in other cases. Again, Gold Line fails to explain how this information could be relevant to any issue in this case or reasonably calculated to lead to the discovery of admissible evidence. Gold Line's request should be denied.

Gold Line attempts to justify its request by suggesting, at page 11 of its motion, that "[w]hat Defendant's other experts said is relevant to the valuation issues facing Plaintiff and could serve to impeach defendant's expert here." Gold Line is wrong. Nothing in the discovery rules of this Court, or any court of which we are aware, provides for the discovery of experts in other cases, regardless of how similar those other cases may be to plaintiff's case. An expert is not a fact witness. An expert's opinion based upon the facts and circumstances of another case are of no relevance and are not admissible as evidence in this case.

Moreover, as the Court is aware, the Court must decide each case upon its own merits, in light of the evidence and arguments advanced by the individual parties in that case. The Court may not decide one case based upon the record developed in some other case. For example, the ex parte criticisms of Gold Line's case secretly conveyed to the Court by counsel for plaintiff in La Gloria Oil and Gas Company v. United States, No. 02-465 C (Fed. Cl.), in the March 12, 2004 response to the Court's show cause

order in that case, are not part of the record in this case and will play no part in the decision upon the merits of this case. Gold Line's suggestion of the relevance of the opinions of other experts that may testify upon behalf of the Government in other cases would, if supportable, mean that the opinions of all of the experts that may testify upon behalf of any party in any of these similar fuel cases would be relevant to determining the merits of each of the cases. Taken to its logical conclusion, Gold Line's suggestion would mean that the opinion of any expert that has ever formed an opinion upon the proper valuation of a product or commodity is relevant, and one party may request discovery of that information from another party. The rules of this Court do not provide for the discovery of experts beyond those who have been engaged in this case. If Gold Line desires the opinion of another expert, it may hire another expert to render an opinion.

Further, the opinion of some other expert in some other case cannot be used to impeach the opinion of the Government's expert in this case. In general, a witness may be impeached by prior inconsistent statements, contradiction of facts, bias, or character. None of these impeachment tools may be derived from the opinion of an expert in some other case. The Government's expert in this case, Mr. C. Alan Stevens of Stancil & Co., is not a fact witness; he is an independent expert in the valuation of refined petroleum products and will testify to the Court regarding his opinion as to the proper valuation of the fuel that Gold Line delivered under the contract. We have already provided

to Gold Line all of the information requested regarding Mr. Stevens's work and testimony in this case and in the other similar cases. We have provided Gold Line with Mr. Stevens's report in this case. Gold Line has deposed Mr. Stevens. Gold Line may offer Baker & O'Brien or any other witness it hires to provide opinion testimony in this case to challenge Mr. Stevens's opinion, but the opinions of other experts in other cases are not relevant, would not be admissible, and are not reasonably calculated to lead to the discovery of admissible evidence.

Because the information that Gold Line requests is not relevant to any issue in this case or reasonably calculated to lead to the discovery of admissible evidence, and because we have already provided Gold Line with all of the expert discovery to which it is entitled, Gold Line's request that we be compelled to provide further response or production of documents should be denied.

## CONCLUSION

For these reasons, we respectfully request the Court to deny Gold Line's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7300
Facsimile: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

BERNARD A. DUVAL
Counsel
HOWARD KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Fort Belvoir, VA

March 26, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2004, a copy of the foregoing document, "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Reginald T. Blades, Jr.